UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BIGFOOT VENTURES LLC,<br><br>Plaintiff,<br><br>v.<br><br>THE CELEBRITY CAFE.COM, LLC, and DOMINICK A. MISERANDINO,<br><br>Defendants. | Civil Action No.: 17-cv-7659<br><br>**COMPLAINT**<br><br>ECF Case |

Plaintiff, Bigfoot Ventures LLC ("Bigfoot"), by and through its attorneys, Morton & Associates LLP, and as for its Complaint against Defendants The Celebrity Cafe.com, LLC ("Celebrity Cafe") and Dominick A. Miserandino (collectively the "Defendants") alleges, upon information and belief, as follows:

## NATURE OF THE ACTION

1. This action arises as a result of Defendants' fraudulent misrepresentations made to Plaintiff in connection with the sale of the website www.thecelebritycafe.com (the "Website").

## PARTIES

2. Bigfoot is a limited liability company, duly organized and existing under the laws of the State of New York, with a principal place of business at 246 West Broadway, New York, New York 10013. Bigfoot's sole member is Michael Gleissner, an individual presently domiciled in Hong Kong, S.A.R.

3. Celebrity Cafe was a limited liability company existing under the laws of the State of New York, with a principal place of business at 414 Nassau Parkway, Oceanside, New York 11572. Although the domiciles of all members are unknown,

1

Plaintiff has a good faith and reasonable belief that no members are domiciled in Hong Kong, S.A.R.

4. Dominick A. Miserandino is an individual domiciled in the State of New York.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over all causes of action asserted herein pursuant to the diversity provisions of 28 U.S.C. §1332(a)(2), because the claims exceed the sum or value of $75,000, exclusive of interest and costs, Plaintiff is a resident of Hong Kong S.A.R. and Defendants are either domiciled or maintain a principal place of business in the State of New York.

6. Venue is proper in this District pursuant to 28 U.S.C. §1391(b) and (c). Defendants are domiciled and doing business in New York.

7. This Court has personal jurisdiction over Defendants, pursuant to CPLR § 301, because Celebrity Cafe was incorporated and maintained its principal place of business in the State of New York and Miserandino is domiciled in New York.

## FACTS

### www.TheCelebrityCafe.com Is Born

8. Developed in 1995, the Website was managed and maintained by Defendants for well over a decade as an entertainment site covering the most up to date news and developments in Hollywood and beyond.

9. As of 2014, the Website boasted a staff of 150+ active volunteer writers, 2000+ inactive volunteer writers and 4 full time and 2 part time paid contracted writers, reviewing new television shows and movies, holding contests and generally musing about the latest celebrity news and gossip.

10. Google Analytics revealed that for the period ranging from August 2013 to September 2014, the Website attracted over 102 million users and over 412 million page views.

11. Defendants represented that the Website's annual revenue, derived mostly from advertising, was $1,519,137.93, which equated to an annual profit of $948,528.53.

### Bigfoot Acquires www.TheCelebrityCafe.com

12. Relying on the representations made by Defendants regarding the Website's revenue, traffic and other salient topics, on November 26, 2014, Bigfoot entered into an agreement with Defendants to purchase the Website for $775,000.00, of which $573,750.00 was disbursed to Defendants.

### Aftermath

13. Within months of Bigfoot's acquisition of the Website, both traffic and revenue began to drop precipitously.

14. Google Analytics illustrated that for the time period between March 1, 2015 and March 31, 2015, while the Website was still under the management and supervision of Defendants, it had over 21.5 million page views.

15. However, only 1.8 million page views, approximately 8.5%, were "organic" traffic, which is composed of unique, human visitors to the Website.

16. The Website's remaining 19+ million page views were "purchased" traffic, which are artificial page views automatically generated by computers and bots.

17. Because such a discrepancy in the balance between organic and purchased traffic is disfavored and against both Google's and many advertisers' policies, Google

AdSense began blocking much of the advertising previously displayed on the Website.

18. Thereafter, unsurprisingly, the Website's advertising revenue steadily disintegrated to the point where Bigfoot was receiving annual revenue in the hundreds of dollars as opposed to the $1.5 million that Defendants represented prior to the sale.

## CAUSE OF ACTION

### Fraud

19. Plaintiff hereby repeats each and every allegation set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

20. A Defendant is liable for fraudulent misrepresentation if: (1) Defendant knowingly makes a misrepresentation, (2) with an intent to deceive Plaintiff, (3) Plaintiff reasonably relies on the misrepresentation and (4) Plaintiff suffers damages.

21. In the time period leading up to the sale of the Website, Defendants knowingly and intentionally inflated and misrepresented material facts and figures about the Website such as annual revenue and monthly traffic.

22. Defendants misrepresented the aforementioned figures with an intent to deceive Plaintiff and induce it to purchase the Website.

23. Plaintiff reasonably relied on the Defendants' misrepresentations, which were outlined in an investor package generated by an independent third-party web property broker.

24. As a proximate result of the Defendants' fraudulent misrepresentations, Plaintiff suffered damages in the amounts at least equal to the purchase price of the Website as well as the loss of expected annual advertising revenue.

**WHEREFORE**, based on the foregoing, Plaintiff demands judgment against Defendants, jointly, severally and alternatively as follows:

i.  Compensatory damages, in the amount of $573,750.00 representing the portion of the purchase price of the Website that was tendered to Defendants in connection with the sale.

ii. Consequential damages, in the amount of $950,000.00, representing the expected lost earnings and one year's annual profit from the operation of the Website.

iii. Pre-judgment and post-judgment interest in an amount to be determined.

iv. Attorneys' fees and the costs and disbursements of this action.

v.  Such other and further relief that this Court deems just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury as to all issues.

Dated:  New York, New York
         October 6, 2017

                                          **Morton & Associates LLP**

                                          _____
                                          By: Roman A. Popov, Esq. (RP7625)
                                          *Attorney for Plaintiff*
                                          Bigfoot Ventures LLC
                                          246 West Broadway
                                          New York, NY 10013
                                          Tel: (212) 468-5511
                                          Fax: (212) 508-0888
                                          rp@moas.com